Please call the next case. 112-2060, Barbara Hepp v. City of Chicago. Counsel, you may proceed. Good afternoon, Your Honors. Counsel, may it please the Court, my name is Dennis Lynch from the Healy Law Firm. I represent the appellant, Barbara Hepp. Your Honors, in this instance, the Commission's decision is error because they gave a specific reason for disregarding the opinions of Dr. Malik, and that reason is not supported by the record. And the reason what? The reason for disregarding Dr. Malik's opinion that the arbitrator gave and the Commission affirmed was that on page 75 of his transcript, he stated that the sole basis for his opinion was Ms. Hepp's statement to him. Page 75 of his deposition does not contain that statement, and nowhere else in his deposition or the record is that contained either. Dr. Malik testified that his opinions were based on his review of medical records and deposition transcripts, his examination and history from Ms. Hepp, statistics regarding the treatment of degenerative conditions, and his experience as a neurosurgeon treating patients. He never indicated that his testimony was based on one basis, and his testimony instead demonstrates that he had multiple bases. The Commission also criticized Dr. Malik for not reviewing Ms. Hepp's original MRI when, in fact, the record again specifically demonstrates that he did review the report of that MRI. Although, obviously, it is the role of the Commission to resolve the disputed questions of fact, the Commission's decision must be based on actual facts in the record. Here, the Commission gave specific instances for why they rejected Dr. Malik's opinion, but those bases do not find any support in the record. For that reason, the decision should be reversed in total or at a minimum remanded to the Commission so that they can explain their bases. Similarly, the Commission did not address at all the argument that the alternative argument that Ms. Hepp's injury was caused by repetitive trauma. The undisputed evidence in the record is that Ms. Hepp worked as a traffic aid at Midway Airport. She did so for 14 years. Her job required her to stand and walk for 8 to 12 hours a day unless she was on a break. Dr. Malik's opinion was that these activities would have contributed to her low back condition. Dr. Nelson, the Midlands orthopedic physician that the city sent Ms. Hepp to for treatment, testified that those activities would contribute to her low back condition. Certainly on cross-examination when the city's orthopedic surgeon was examined by the city's council, Dr. Nelson appeared to distance himself from that position. However, it's clear from reading his testimony that he was applying an incorrect legal standard. Dr. Nelson. Hang on a second. Yes, sir. According to the evidence Dr. Nelson opined, the claimant's current low back pain was a result of a degenerative process caused only by her regular daily activities. The record also established that when Dr. Nelson was asked if the claimant's work activities contributed to the current condition of her ill being, he stated the work activities had no relationship to her current condition. I don't see that as any kind of a fudge factor whatsoever. Well, what Dr. Nelson testified, Your Honor, and it's in the supplemental record at 1020 to 1021, he said that back problems tend to be related to activities, that she works as a traffic aid, she stands a lot, and so certainly standing can contribute to some low back symptoms. Well, she could be standing at home. Did he not say that her work activities had no relationship to her current condition? Did he or did he not say that? I believe he testified that he didn't believe the accident was related to her current condition, but not that it was her work activities. He testified that he had a dilemma and a problem explaining whether her work activities contributed because in his view that had to be the only factor. A reading of his testimony reveals that in his mind her work activities could only be a cause for back problems if it was the sole cause, and that's obviously not the law. He hadn't read CISPRO? I'm sorry, Your Honor? He hadn't read CISPRO? He had not, Your Honor, and if you'd like to direct him to do so, that may be beneficial in the future. But that's what a reading of his testimony reveals, is that in his mind it had to be a sole cause, and that's obviously not the law. And here again the problem is the commission never addressed the argument. What argument? They didn't address what argument? The repetitive trauma argument that her activities overall contributed to her low back condition. And you made that argument before the arbitrator? Yes, Your Honor. Before the arbitrator and then on review to the commission that argument was made. It was not specifically addressed to the commission. Here again I think that a reversal is required or in the alternative a remand to the commission so that they can specifically address that argument. Again, obviously deference is owed to the commission's decision, but they need to issue a decision on the issues, and they need to have that decision to be based on the actual facts on the record. This is a 19B, right? Correct, Your Honor. So, I mean, no matter what happens, this needs to be remanded. I mean, there's been no determination of permanency on the knees? Correct. Correct, yeah. The knee conditions were not disputed by the time it got to the 19B that was tried, nor did the city dispute that there was a low back problem that was related to the accident. So there's certainly some permanency that would have to be decided on remand at a minimum. Even putting those two issues aside, the manifest weight of the evidence still suggests that the commission's decision is in error. There was no evidence that Ms. Hepp had any low back problems prior to her accident on the job. There was no dispute that an accident occurred. She began the complaints of her back pain began to be documented as of her second visit to Mercy Works. Dr. Nelson testified that her 2007 MRI and her 2009 MRI were similar. They both showed a defect at the L4, L5 level, which is what was eventually fused by Dr. Malik. Dr. Malik, Dr. Slahi, Dr. Ahn all reported a consistent history from Ms. Hepp that she had back problems since the motor vehicle accident. There was no testimony by any of Ms. Hepp's coworkers or supervisor that she did not experience problems when she did return to work. Obviously, the failure to produce that testimony should give rise to an adverse inference, again, that was not addressed by the commission despite being raised, nor did the commission address Ms. Hepp's argument that an adverse inference should be drawn from the fact that the city never offered its initial section 12 examiner report into evidence at trial. Backing up for a moment as to Dr. Slahi, Dr. Slahi, his only opinion was that the accident, the 2007 accident wasn't the cause of her current condition. He never gave an opinion as to what the cause of that current condition was. He never testified as to repetitive trauma, nor would he have been able to give a valid repetitive trauma opinion because he believed she worked as an air traffic controller and not as a traffic aid. Is it true that your client had absolutely no medical treatment nor made any complaints about low back pain from July of 2008 through May of 2009? July of 2008 until May of 2009. I believe that January 4th, 2009 is when she was first seen by Dr. Malik and had a complaint of low back pain radiating to the lower extremity. So it would be July 10th, 2008 is when she was released to return to work. Her next medical treatment was in January. And her testimony was that although she was working during that time, she was experiencing difficulty. That testimony was never rebutted. Unless there's any other questions, I would ask that the decision be reversed or in the alternative remanded to the Commission for further consideration of the issues advanced. Thank you, Counsel. Counsel, you may respond. Counsel, members of the Court, my name is Marty Spiegel, and I represent the employer in this matter. I sat here this morning listening to the oral arguments of counsel. I learned a couple of things. A common thread ran among all these manifest way to the evidence questions, and that's this Court's not going to substitute their opinion for the Commission's on medical issues. And that's what this case is. The other thing I learned is a longer argument necessarily isn't a better argument. So I'm going to try and keep mine very short. Boy, is that good advice. Thank you, Your Honor. Counsel spent a lot of time telling you what supports Ms. Hape's case. He didn't spend a lot of time telling you what supports the Commission's decision. And I think that's what we really need to look here. Because the question is, is the Commission's decision against the manifest way to the evidence? She injured herself, or she was injured when she was struck by a car at Midway Airport. She most definitely had bilateral knee pain, low back pain. She continued to treat at Mercy Works, and then she was referred to Dr. Dirk Nelson, an orthopedic surgeon. She treated with Dr. Nelson, who eventually did a knee surgery. Her first of two knee surgeries. He also had an MRI done of the low back, which did show an L45 defect, which Dr. Nelson described as it's not an acute finding, it's age-appropriate changes. Then how would you characterize Dr. Nelson's opinion? I thought his opinion was pretty strong. He came right out and said her condition in her low back after June 28, 2007, had reached a state of maximum medical improvement, and that her condition in 2009 is not related to the original accident. Your counsel sort of argues that he wasn't really certain, he was sort of wobbling. Is that the case? Judge, the exact quote that I wrote down was that the accident was a temporary exacerbation of a preexisting condition that resolved by June 28, 2007. That's what Dr. Nelson testified to. It cannot relate her current complaints to the accident. That's what Dr. Nelson said. I think the other things you need to look at, between June 28, 2007, when she saw Dr. Nelson for her low back complaints, as well as for a review of the MRI of the back, that's the last time she complained of low back pain until 2009. She continued to treat with Dr. Nelson because of her needs. August, September, October, all the way up through July 2008, without another mention of low back pain, she gets released to return to work on July 10, 2008. She's as good as she's going to get. No mention again of low back pain. She returned to work July 14, 2010, and she works ten months until May 14, 2009, at which point she comes back to Dr. Nelson complaining of knee, bilateral knee, and low back pain again. So it's been 22 months since she last complained of low back pain. Counsel told me when I asked him the question that she complained to some doctor in January of 2009. Was that Dr. Malachy he was talking about? She first saw him in November of 2009. So she couldn't have been complaining to him in January. And she may very well have been complaining about knee pain and back pain during this whole two years where, or I'm sorry, not two years, 22 months where she wasn't, no records of knee pain. And I'm not saying that the doctors support her claims of low back pain, but the reality is she didn't go to a doctor about the low back pain. It's not recorded in the doctor's medical records. Can a reasonable inference be drawn, then, that something else occurred in that intervening two years to cause her low back pain to rise again? I think so. Is it a reasonable inference to conclude that the condition in 2009 was not related to the original incident and possibly something else, a normal degenerative process? Of course, but going beyond that, we also have Dr. Nelson's opinion. Dr. Nelson's opinion was that he did not believe her current condition was related to her work in 2009. He also did not believe her condition after June 28, 2007 was related to the original accident. And I think another factor that we really need to consider here is that counsels made points about her condition and the repetitive trauma and the problems that she was having in 2009. There was only one application for adjustment of claim on file at the commission. There was an application for adjustment of claim alleging I believe the date was March 2, 2007. There was no subsequent accident filed. There's medical testimony indicating the condition was not causally related to that accident. Could that subsequent work, if it really was repetitive trauma, led to another claim? Yes. There wasn't anything else there for the commission to decide other than whatever was going on in 2009 is not related to the only application for adjustment of claim that we have on file. Just a couple more points. I think in looking at Westlaw this morning, I found 2,906 cases discussing manifest weight at the accident. And I think it's important to understand that the evidence that's been presented in the case is not the evidence that's been read. It's the evidence that's been written. You cited them all in your brief? No, I did not. And I can't even say that I read them all. But the one thing that seemed to be apparent is, and common thread, is the evidence sufficient to support the finding of the commission? Yes. And I think in this case it will. And putting it in another way, this Court will only reverse if no rational trier of fact could agree with the commission. I submit to you Is that from a recent case? There's a lot of those cases, Judge. But I submit to you that individually and collectively, you are rational triers of fact. And that you cannot and should not reverse the commission's determination on this issue. We respectfully request that you affirm the commission's decision in all respects. Thank you. Your Honors, I think the issue with distilling Dr. Nelson's testimony is because there's two issues that kind of get conflated. And one is a specific trauma and one is a repetitive trauma. And Dr. Nelson's specific testimony, and it's in the record on 1019 and 1020, was that he had difficulty, that's his quote, and a dilemma, his quote, applying the proper standard. And so when you remove his inaccurate, incorrect standard and apply the correct standard to his testimony, it's clear that your activities as a traffic aid contributed to her low back condition. What are we supposed to do with the specific finding that Dr. Malik was not crippled? Well, Your Honor, that was the very first point that I asked you to address. The specific finding that Dr. Malik is not crippled relates to the fact that supposedly his sole basis was a statement from Ms. Nelson. That's not true. I'm reading it. Counsel, you've got to be fair with the record with us. Absolutely, Your Honor. You're not being fair with me on, you weren't fair with me on the day she first saw Malik. You told me she was treated in January of 09, when she wasn't. She wasn't treated until July or May. But that's not what the arbitrator said. He said Malik admitted he didn't review the medical records from Christ Hospital. He didn't review the MRI from June of 2007. He never reviewed the 2007 MRI. He didn't review the 2009 MRI or records from the time of her work accident on March 2, 2007 through the date that he first saw her. That's part of why they didn't believe him. He didn't look at anything. Well, Your Honor, but there's a couple issues there. Number one, specifically again, the commission says he didn't review the June 2007 MRI. Yes, he did. The only evidence is the record is that he said he did. Similarly, some of those other records, those are the, he did not review those records. That is true, but you have to look at the commission's decision in total. He did review the 2007 MRI. The specific instance given by the commission was that he made a statement on page 75 of his deposition that his sole basis was the statement from Ms. Hepp. That's not supported by the record. In terms of the treatment date, Your Honor, I apologize. What I have indicated is that it was January 4, 2009. Obviously, the record will bear out what the correct date is. The record bears out that she first saw him on November 4, 2009 is what the record bears out. Sent to him by your office. Yes, Your Honor, absolutely. Absolutely. She was originally seen by Dr. Nelson at the city's request. We asked Dr. Malik to examine her and she subsequently was treated. Yes, correct. So it wasn't totally at the city's request. He wasn't a treater. The city directed her. I understand that, but he was a treater. Yes, absolutely. He performed the two knee surgeries. But it's for those reasons, because the commission's decision disregarding Dr. Malik are in error, that I think a reversal or at a minimum a remand to reconsider is warranted. Because the plain evidence in the record is that she did, he did review that 2007 MRI. The plain evidence in the record is that he did not give his opinion based on one sole basis. And so certainly the commission's decision is entitled to deference, but I think that the petitioner and I think this court is entitled to an accurate decision from the commission that actually addresses the issues being advanced. Thank you. Thank you, Counsel Bull. This matter will be taken under advisement. This position shall issue.